# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE

**WILLA DEAN "DEANIE" PARKER, individually and ROSE BANKS, individually, and as successor-in-interest to HOMER BANKS,**

    Plaintiff,

vs.

**MERVYN "MUFF" WINWOOD, SPENCER DAVIS, and STEVE WINWOOD, individually and collectively as THE SPENCER DAVIS GROUP, KOBALT MUSIC PUBLISHING; UNIVERSAL-SONGS OF POLYGRAM INTERNATIONAL, INC.,**

    Defendants.

No. 3:16-cv-00684
Judge McCalla

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MERVYN "MUFF" WINWOOD'S MOTION TO DISMISS

COMES NOW the Plaintiffs, in opposition to Defendant Mervyn "Muff" Winwood's Motion to Dismiss for lack of personal jurisdiction and insufficient service of process and state as follows:

### I. INTRODUCTION

This Court should deny the Defendant's Motion for two reasons: (1) Defendant's actions, which gave rise to this suit, make the exercise of personal jurisdiction proper under T.C.A. § 20-2-214 or in the alternative, Fed. R. Civ. P. 4(k)(2), and (2) the Defendant was properly served under the applicable law.

## II.   FACTS

Defendant co-authored the infringing work, "Gimme Some Lovin," while performing and recording as a member of The Spencer Davis Group. (D.E. 77-1, 3). Defendant's former bandmate and co-defendant, Spencer Davis, stated that it was Defendant who proposed incorporating distinctive elements of Plaintiffs' original and protected work, "Ain't That a Lot of Love," into their song "Gimme Some Lovin." (D.E. 1 ¶ 25). The band then recorded a second version of the song, retaining the distinctive elements of Plaintiff's original work, specifically to market in the United States. (Decl. of Stephen Winwood in Support, ¶ 3, originally filed as D.E. 58 and attached hereto as **Exhibit A**).[1] That song spent twenty weeks on the *Billboard* music charts "Hot 100" list of most popular American Singles in 1966, peaking at number seven on the chart at the height of its American popularity. (D.E. 1 ¶ 28). Shortly after leaving the group, Defendant worked for Island Records, which later became a division of Defendant Universal Music Group, and was the very label with whom Defendant contracted to promote and market his infringing work in the United States. (D.E. 77-2, ¶ 2).

Through his efforts and those of his agents, both in the United States and abroad, Defendant has realized and continues to reap substantial profits from the promotion and marketing of "Gimme Some Lovin'." (M. Winwood Decl. ¶ 3; D.E. 1 ¶¶ 12, 31, 38). Said agents regularly conduct business in Nashville, Tennessee on Defendant's behalf through the direct and indirect licensing of rights to perform, publish, market, distribute, sell, or otherwise disseminate the song "Gimme Some

---

[1] Plaintiffs attach Defendant Steve Winwood's declaration solely in support of the fact asserted above. Plaintiffs neither concede nor offer as true any statements of Steve Winwood other than that which provides "Gimme Some Lovin" was remixed specifically to market the song in the United States.

Lovin'."[2] (D.E. 1 ¶ 12). Thus, Defendant continues to benefit from his willful infringement through the actions of his agents in the forum.

Plaintiffs Willa Dean "Deanie" Parker and Rose Banks are both Tennessee residents and the effects of Defendant's infringement are most acutely by them in the State of Tennessee. (Id. ¶¶ 1, 2). "Ain't That a Lot of Love" was written in Tennessee and is considered a prized part of the volume of work created by artists on the Tennessee label, Stax Records. (Id. ¶¶ 14-15). The copyright to Plaintiff's protected work was originally administered from Tennessee. (Id. ¶ 18; Ex. A to Pl.'s Compl.). Defendant Steve Winwood is Tennessee resident (Id. ¶ 5) and Defendants Universal Songs of Polygram International, Inc. and Kobalt Music Publishing both have offices and regularly conduct business in Nashville, Tennessee.[3] (Id. ¶ 12).

As further context for the issues presented in this motion, Plaintiffs attach hereto as **Exhibit B** a report prepared by Dan Dixon, a Nashville musicologist, in which he opines that "clear and

---

[2]  Defendants have licensed their song to local recording artists, including singer Debra Lyn of Palette Records, a Mount Juliet, Tennessee record label. *See* DEBRA LYN, GIMME SOME LOVIN, (Palette Records 2016). *See also,* Songwriters in the Round, *Gimme Some Lovin*, YOUTUBE (March 25, 2016) https://www.youtube.com/watch?v=1kayEuAG6nw.

   On information and belief, Kid Rock performed "Gimme Some Lovin" on October 8, 2016, during his Second Annual Fish Fry at The Woods Amphitheater at Fontanel in Nashville, Tennessee.

   Steve Winwood performed "Gimme Some Lovin" with Tom Petty during his September 23, 2014, concert at the Bridgestone Arena in Nashville, TN. *See Tom Petty and the Heartbreakers w/Steve Winwood at Bridgestone Arena, 9/23/14,* THE SPIN (Sep. 24, 2014, 4:00 PM) http://www.nashvillescene.com/music/article/13055659/tom-petty-and-the-heartbreakers-wsteve-winwood-at-bridgestone-arena-92314.

   Several Nashville cover bands include "Gimme Some Lovin" in their marketed set-list. *See* TYRONE SMITH REVUE: WEDDING RECEPTION BAND, http://www.musicgardenbands.com/find-a-band/wedding-bands/tyrone-smith-revue-wedding-band/view-details.html; THE KADILLACS, http://crescentmoonentertainment.com/kadillacs/; THE PINK CADILLAC BAND & DJ, http://www.pinkcadillacband.net/songs-audio; SOUL SOUP BAND, http://www.soulsoupband.com/listen.html; MARINO MUSIC, http://www.marinomusic.com/corporate_private_events/playlist_5060.html; SUPER T REVUE, http://supertrevue.com/song-list/.

[3]  Defendant Kobalt Music Publishing has a local address of 907 Gleaves Street, Suite 101, Nashville, Tennessee 37203. Defendant Universal Songs of Polygram International, Inc. has several sister entities conducting business in Nashville, Tennessee, including: Capital Records Nashville, EMI Records Nashville, MCA Nashville, Mercury Nashville, and Show Dog-Universal Music Group. These entities are collectively referred to as the Universal Music Group Nashville whose corporate address is 401 Commerce Street, Suite 1100, Nashville, Tennessee 37219.

obvious similarities" exist between the two works, and that the foundational bass patterns and piano notes in the two compositions are strikingly similar.

### III. LAW AND ARGUMENT

#### A. Personal Jurisdiction

In deciding a Motion to Dismiss, "the Court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." Bird v. Parsons, 289 F.3d 865, 871 (6th Cir.2002). If the Defendant asserts a lack of personal jurisdiction, a Plaintiff need only make a prima facie showing of jurisdiction in the absence of an evidentiary hearing on the issue.[4] Bird, 289 F.3d at 871. Such a showing may be based solely on a plaintiff's presentation of specific facts by affidavit or otherwise. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). In its assessment, the Court will not consider facts proffered by the Defendant which conflict with those offered by the Plaintiff. Bird, 289 F.3d at 871.

Where the court has subject matter jurisdiction pursuant to a federal question, it may properly exercise personal jurisdiction over a defendant if that defendant is amenable to service of process under the state's long-arm statute and such jurisdiction does not offend due process. Cupp v. Alberto-Culver USA, Inc., 308 F. Supp. 2d 873, 877 (W.D. Tenn. 2004). Tennessee's long-arm statute, T. C. A. § 20-2-214, is coextensive with the Due Process Clause. Payne v. Motorists' Mutual Ins. Cos., 4 F.3d 452, 455 (6th Cir. 1993). Accordingly, the analysis herein need only focus on the permissibility of asserting jurisdiction under the Due Process Clause.

Due Process requires that a Defendant's contacts satisfy a three-part test in order for the court to exercise personal jurisdiction:

---

[4] Plaintiffs aver that whether Mervyn Winwood is subject to personal jurisdiction in Tennessee and the resolution of the merits of this case both relate to his contacts with this state and the dissemination of his infringing work. The issues of jurisdiction and the merits of the case are so intertwined as to require that any determination on either be based on the factual findings of a jury. Accordingly, Plaintiffs submit that this issue should be decided at trial.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Calphalon Corp. v. Rowlette, 228 F.3d 718, 721–24 (6th Cir.2000) (applying the factors from Southern Mach. Co. Inc., v. Mohasco Ind. Inc., 401 F.2d 374 (6th Cir. 1968)). As the Defendant in this case is an alien to the state, "significant weight must [also] be given to the unique burdens placed upon one who must defend oneself in a foreign legal system" Tobin v. Astra Pharm. Prod., Inc., 993 F.2d 528, 545 (6th Cir. 1993).

The due process analysis is the same for a Defendant who has caused a consequence in the forum state through the actions of his agent. T. C. A. § 20-2-214(c). "[M]arketing the product through a distributor who has agreed to serve as the sales agent in the forum State" can "indicate an intent or purpose to serve the market in the forum State." Tobin v. Astra Pharm. Prod. Inc., 993 F.2d 528, 544 (6th Cir. 1993). This is particularly true where the Defendant has benefited financially from the activities giving rise to the Plaintiff's cause of action. See Mott v. Schelling & Company, No. 91–1540, 1992 WL 116014, 1992 U.S. App. LEXIS 12273 (6th Cir. May 29, 1992) (holding that "[d]ue process does not require us to allow [a defendant] to exploit this country's vast, rich markets and at the same time avoid the jurisdiction of our courts").

Case law on foreign manufacturers who avail themselves of the forum, but seek to avoid liability through the use of national distributors is instructive in this case. Such manufacturers hide behind independent distributors to "insulate [themselves] from suit." Tobin v. Astra Pharm. Prod., Inc., 993 F.2d 528, 544 (6th Cir. 1993). In Tobin, the foreign defendant manufacturer sought dismissal for lack of personal jurisdiction in a products liability action over which the federal court exercised diversity jurisdiction. Id. The manufacturer argued that it never availed itself of the

benefits of the forum such that the court could properly exercise personal jurisdiction. Id. at 543. The manufacturer further argued that it was its distributor who marketed its products nationally, allowing the manufacturer to avoid all direct contact with the forum state. Id. The court, relying on Asahi Metal Industries Co. v. Superior Court, 480 U.S. 102 (1987) and subsequent Sixth Circuit jurisprudence, found that the manufacturer "submitted a New Drug Application to the FDA for approval, conducted clinical studies in the United States, and sought out a United States distributor to exploit the United States market." Id. at 544. Such actions, the court reasoned, were tantamount to purposeful availment. Id.

In this instance, Defendant has similarly sufficient minimum contacts with the forum to warrant the exercise of specific jurisdiction. Defendant is not unlike manufacturer in Tobin who hid behind an independent distributor to "insulate it from suit." Tobin, 993 F.2d at 544. He intentionally infringed upon a protected work created here in the State of Tennessee, by Tennessee artists. (D.E. 1 ¶ 25). He re-recorded the offending work to market specifically in the United States. (Ex. A, ¶ 3). Defendant contracted with Island Records, a company he then worked for, to market and promote the offending work in the United States and in Tennessee specifically, generating substantial revenue from its commercial success in the United States.[5] (D.E. 77-2 ¶ 2; D.E. 1 ¶ 28). Finally, Defendant's agents both maintain offices in Nashville, Tennessee, and have licensed the use of the song "Gimme Some Lovin'" in Tennessee.[6] (D.E. 12).

The Defendant contends that he has never purposely availed himself of the benefits of the forum because he has personally never been to the state and he has no control over or input in marketing and distributing his infringing work. It was not him, Defendant argues, but "Island Records [who] promoted and marketed the promotional and commercial release of 'Gimme Some

---

[5]   *Supra* note 1.

[6]   *Id.*; *Supra* note 2.

Lovin'." (D.E.77-1,3). Royalty payments from those efforts are then paid to him in the United Kingdom. (D.E. 77-2 ¶ 13). According to Defendant, willfully infringing on Plaintiffs' protected work and then collecting the fruits of his infringement is not sufficient enough to warrant the exercise of personal jurisdiction.

Defendant argues that his hand- off approach to the promotion and marketing of the work should preclude this court from exercising personal jurisdiction and effectively absolve him of any liability. Yet, Defendant's employment with Island Records suggests his relationship with those administering rights to his song is not so tenuous. Furthermore and of greater import is Defendant's agency relationship with those administering his copyrights. It is precisely the kind of foreign manufacturer-domestic distributor relationship that the Sixth Circuit has refused to recognize as insulating the manufacturer from liability. Defendant manufactured a song derivative of Plaintiff's original work and in violation of the Copyright Act. Island Records, later Universal Songs of Polygram International, Inc., and Kobalt Music Publishing, distributed the infringing work in Tennessee and throughout the United States. The agency relationship is not a one-way conduit through which the Defendant is allowed to profit at the expense of the Plaintiffs. Nor does his allegedly hands-off approach to marketing and distribution by relinquishing control of the work fail to create a relationship through which he can be held liable. "In its broadest sense, the concept of agency 'includes every relation in which one person acts for or represents another.'" Town of Smyrna, Tenn. v. Mun. Gas Auth. of Georgia, 129 F. Supp. 3d 589, 604 (M.D. Tenn. 2015) (quoting White v. Revco Disc. Drug Ctrs., Inc., 33 S.W.3d 713, 723 (Tenn. 2000). Defendant intentionally contracted for the administration of his work by his agents and he is compensated according to the terms of that agreement. (D.E. 77-2 ¶ 3). Defendant's agents represent Defendant in Tennessee by licensing his work and collecting licensing fees on his behalf, which are then paid to him in the

United Kingdom. (Id. ¶ 13). Defendant, through his actions and those of his agents, has purposely availed himself of the forum.

The second element of the due process analysis is easily met. This action centers around Defendant's willful infringement of Plaintiff's protected work, created in Tennessee and whose copyright was originally administered from Tennessee. The promotion and marketing of "Gimme Some Lovin'" in this state forms a significant basis of Defendant's contacts and gives rise to this cause of action.

The consequences of Defendant's actions are most acutely felt here in Tennessee: Both plaintiffs are Tennessee residents; Plaintiffs' original song is part of this state's rich musical heritage and any infringement thereon violates the rights of Tennessee residents to the protection of their original work; and the revenue that Defendant realizes as a result of marketing and promoting the infringing work is wrongly diverted to him and away from Plaintiffs here in Tennessee.

Defendant has also furthered no argument that defending this action in the forum would constitute an undue burden. Just the opposite appears to be true. Prior to his Motion, Defendant provided both a declaration (D.E. 57) and entries from his journal (D.E. 57-1) in support of Defendant Kobalt Music Publishing and Steve Winwood's Motion for Summary Judgment (D.E. 55). He stated that until 2004 he traveled to the United States as frequently as three times a year. (D.E. 77-2 ¶ 14). Nothing in the record indicates that litigating in this forum would present an undue hardship on the Defendant.[7]

Accordingly, the exercise of personal jurisdiction over Mervyn Winwood comports with due process. Defendant has availed himself of the forum through his actions and those of his agent; this case arises out of Defendant's infringement and his agent's promotion and marketing of the

---

[7] Plaintiffs of course cannot compel Mr. Winwood's in-person appearance for a deposition in Nashville, but would secure his testimony where he is located, either live or by videoconference.

8

offending work at the Plaintiffs' expense; the effects of the infringement are most acutely felt here in Tennessee where the song was written and where Plaintiffs reside; and litigating in the forum would not present an undue burden on the Defendant.

### 2. Alternatively, this Court May Exercise Jurisdiction Over Mervyn Winwood pursuant to Fed. R. Civ. P. 4(k)(2)

Plaintiffs maintain that this Court may properly exercise specific jurisdiction over Defendant under T. C. A. § 20-2-214 because Tennessee is the only appropriate state in which to litigate the dispute. However, should this Court find that Defendant is not subject to personal jurisdiction in the State of Tennessee, Plaintiffs submit that the exercise of personal jurisdiction would be proper under Fed. R. Civ. P. 4(k)(2), because Defendant would not be subject to the jurisdiction of any state. Rule 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons ... is also effective, with respect to the claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed. R. Civ. P. 4(k)(2). The Due Process analysis focuses on the quality of Defendant's contacts with the United States as a whole. See, Inc. v. Imago Eyewear Pty, Ltd., 167 F. App'x 518, 522 (6th Cir. 2006). Defendant must have (1) purposely availed himself of the privilege of acting or causing a consequence in the United States, (2) the cause of action must arise from his activities here, and (3) the consequences of those actions must have a substantial connection to the United States to warrant the exercise of personal jurisdiction. Calphalon, 228 F.3d at 721–24 (6th Cir.2000).

Evidentiary support for the first prong of the analysis is two-fold: Defendant caused a consequence here when he purposely infringed upon Plaintiffs' protected work in contravention of the Copyright Act and he availed himself of the privilege of acting in the forum through the actions of his agent in disseminating and promoting the derivative work "Gimme Some Lovin'." Plaintiffs'

cause of action stems directly from this infringement and Defendant's promotion of his derivative work in violation of Plaintiffs' rights. The Plaintiffs are United States citizens and residents who have suffered a loss of profit, publicity, opportunity, and goodwill in the United States as a result Defendant's actions. The enforcement of federal law and the preservation of the protections of the Copyright Act warrant the exercise of personal jurisdiction over Defendant who would otherwise continue to profit from his willful violation of U.S. law.

### B. Defendant was Properly Served Under the Hague Convention

Pursuant to Rule 4(f)(1) of the Federal Rules of Civil Procedure, service of process on an individual in a foreign signatory country must be made in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"). "Under the Hague Convention, service of leading process must be made through the foreign country's designated Central Authority." The Hague Convention, Art. 2, 20 U.S.T. 361. The Documents to be served are sent to a country's designated central authority. Id. Upon determining that the documents to be served comport with the Country's internal law, the Central Authority executes service and returns to the requester a Certificate of Service. Id. at Art. 5-6. The completed Certificate of Service is proof that the Defendant was properly served under the Hague Convention.[8]

---

[8] The language of the Hague Convention makes it clear that whether service was properly effected is a matter reserved to the Central Authority of the Country in which service is sought. Courts opining on the effect of service have similarly held that the Certificate of Service is prima facie evidence of proper service. *See* Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1389 (8th Cir. 1995) ("By not objecting to the documents and by certifying service the Central Authority indicated that the documents complied with the Convention and that it had served them in compliance with the Convention, i.e., that it had made service as Spanish law required. We decline to look behind the certificate of service to adjudicate the issues of Spanish procedural law. . . ."). *See also* Luv N' Care, Ltd. v. Rimar, No. CV 15-2349, 2016 WL 8679268, at *6 (W.D. La. Feb. 26, 2016) (citing to Northrup); Aly v. Hanzada for Imp. & Exp. Co., No. 12-CV-6069-SJ-DGK, 2014 WL 2829513, at *5 (W.D. Mo. June 23, 2014) (same); Hubei Gezhouba Sanlian Indus. Co. v. Robinson Helicopter Co., No. 2:06-CV-01798-FMCSSX, 2009 WL 2190187, at *4 (C.D. Cal. July 22, 2009), aff'd, 425 F. App'x 580 (9th Cir. 2011)(same); In re Vitamins Antitrust Litig., No. MISC. 99-197 (TFH), 2001 WL 34088810, at *1 (D.D.C. Mar. 9, 2001) (same).

Great Britain is a signatory to the Hague Convention. Service was made through the British Central Authority, the Senior Master of the Royal Courts of Justice, who returned a completed Certificate of Service which Plaintiffs' have filed with the Court. (D.E. 75). Defendant does not raise any constitutional issues or argue that he was somehow prejudiced in this action by the manner in which service was effectuated. Thus, any further adjudication of the issue would be improper as it would necessarily implicate British procedural law. Because the British Central Authority has deemed service proper, the Defendant was properly served.

## IV. CONCLUSION

In light of the foregoing, Plaintiffs request that this Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

BURCH, PORTER & JOHNSON, PLLC


 s/Taylor A. Cates
Taylor A. Cates (#20006)
130 North Court Avenue
Memphis, Tennessee 38103
Telephone:     901-524-5000
Facsimile:     901-524-5024
*Attorney for Plaintiffs*


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served on the following via the Court's electronic filing system:

Jay S. Bowen
Lauren E. Kilgore
Rebekah Shulman
Shackelford Bowen McKinley & North, LLP
47 Music Square East
Nashville, TN 37203

Brittany A. Schaffer
Loeb & Loeb
1906 Acklen Avenue
Nashville, TN  37069

Barry Slotnick
Loeb & Loeb LLP
345 Park Avenue
New York, NY  10514

this 28th day of April, 2017.

                                                  s/Taylor A. Cates
                                                  Taylor A. Cates