UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLA DEAN "DEANIE" PARKER et al., <br><br> Plaintiffs, <br><br> v. <br><br> MERVYN WINWOOD et al., <br><br> Defendants. | Case No. 3:16-cv-00684 <br><br> Judge Eli J. Richardson <br> Magistrate Judge Alistair E. Newbern |

To:   The Honorable Eli J. Richardson, District Judge

**REPORT AND RECOMMENDATION**

Before the Court in this copyright infringement case are Defendants Steve Winwood, Mervyn "Muff" Winwood, and Kobalt Music Publishing's motions for attorney's fees and costs under 17 U.S.C. § 505. (Doc. Nos. 102, 125.) Plaintiffs Willa Dean "Deanie" Parker and Rose Banks have responded in opposition to the defendants' motions (Doc. Nos. 108, 129), and the Court has referred the motions to the undersigned Magistrate Judge for a report and recommendation (Doc. No. 133). Having considered the parties' arguments, and for the reasons that follow, the Magistrate Judge will recommend that the defendants' motions be denied.

I.   **Relevant Background**

   A.   **District Court Proceedings**

Parker and Banks initiated this action on March 29, 2016, alleging copyright infringement against the Winwoods, Kobalt, and several other defendants. (Doc. No. 1.) Specifically, Parker and Banks claim that the song *Gimme Some Lovin*—a hit for The Spencer Davis Group co-written by the Winwoods and Spencer Davis in London, England, in 1966—copies the bass line from the Homer Banks record *Ain't That a Lot of Love*—co-written in Memphis, Tennessee, by Parker and

Banks's late husband Homer Banks in 1965—and is so substantially similar musically as to infringe the earlier song's copyright. (*Id.*) Steve Winwood and Kobalt moved for summary judgment, arguing that *Gimme Some Lovin'* could not have infringed on Parker and Banks's copyright because *Gimme Some Lovin'* was written and recorded before *Ain't That a Lot of Love* was promotionally released in the United Kingdom, and the Winwoods and Davis did not have access to the Homer Banks record before writing *Gimme Some Lovin'*. (Doc. No. 55.) Among Steve Winwood and Kobalt's summary judgment exhibits were sworn declarations from the Winwoods and Davis stating that they had not heard *Ain't That a Lot of Love* when they wrote *Gimme Some Lovin'*. (Doc. Nos. 57–59.)

Parker and Banks responded in opposition to the summary judgment motion, arguing that there was a genuine dispute of material fact about whether the Winwoods and Davis had heard *Ain't That a Lot of Love* before writing *Gimme Some Lovin'* because the song had been independently recorded and made available in 1965 and because there was a twenty-one-day window of time in 1966 between the U.K. release of *Ain't That a Lot of Love* and the release of *Gimme Some Lovin'*. (Doc. No. 64-6.) In support of their argument, Parker and Banks filed: (1) a book excerpt reprinted on the Memphis Music Hall of Fame's website stating that copies of *Ain't That a Lot of Love* reached England in the mid-1960s and "morphed into" *Gimme Some Lovin'* (Doc. No. 64-1, PageID# 490); and (2) several magazine articles republished on Steve Winwood's website that quote Davis and others stating that Muff Winwood's bass riff in *Gimme Some Lovin'* was taken from the Homer Banks record. (Doc. Nos. 64-2–64-5). The defendants argued that this evidence was inadmissible hearsay that could not be considered at summary judgment. (Doc. No. 74.)

Muff Winwood, who is a U.K. citizen, then moved to dismiss Parker and Banks's claims against him for lack of personal jurisdiction and insufficient service of process. (Doc. No. 76.) His primary argument was that Parker and Banks failed to allege that he had sufficient contacts with the State of Tennessee to establish that this Court had personal jurisdiction over him. (Doc. No. 77-1.) Parker and Banks responded in opposition, arguing that Muff Winwood's actions related to creating, recording, marketing, promoting, and distributing *Gimme Some Lovin'* were sufficient to establish this Court's personal jurisdiction over him. (Doc. No. 86.) Parker and Banks also submitted as an exhibit to their response to the motion to dismiss an expert report prepared by musicologist Dan Dixon providing some evidence that the Winwoods and Davis likely had access to *Ain't That a Lot of Love* before composing *Gimme Some Lovin'* and finding substantial similarities between the songs. (Doc. No. 86-2.)

On October 17, 2017, the Court granted Steve Winwood and Kobalt's motion for summary judgment. (Doc. No. 99.) The Court found that the book and magazine excerpts Parker and Banks offered in opposition to summary judgment were inadmissible hearsay and that there was no other evidence in the summary judgment record to dispute the Winwoods' and Davis's sworn assertions that they had not heard *Ain't That a Lot of Love* when they wrote *Gimme Some Lovin'* and therefore could not have copied it. (*Id.*) The Court did not consider Dixon's expert report in ruling on the summary judgment motion. The Court also granted Muff Winwood's motion to dismiss, finding that Parker and Banks had failed to set forth specific facts showing that the Court had personal jurisdiction over him. (*Id.*)

Parker and Banks appealed the Court's order granting summary judgment in favor of Steve Winwood and Kobalt and dismissing Muff Winwood. (Doc. No. 118.)

## B. Appeal

On appeal, Parker and Banks argued that the Court erred by: (1) excluding the book and newspaper excerpts from evidence; (2) granting summary judgment when Dixon's expert report found striking similarities between the two songs; and (3) dismissing Muff Winwood for lack of personal jurisdiction. *See Parker v. Winwood*, 938 F.3d 833, 836, 838, 840 (6th Cir. 2019). The Sixth Circuit affirmed, holding that: (1) the book and magazine excerpts were inadmissible hearsay, *id.* at 836–38; (2) the Court was not obligated to consider Dixon's report, which Parker and Banks only presented after summary judgment briefing concluded, *id.* at 838–39; and (3) Parker and Banks failed to show personal jurisdiction over Muff Winwood because there was no evidence that Muff himself directed distribution of *Gimme Some Lovin'* within the United States or specifically within Tennessee, *id.* at 839–41.

Judge Donald filed a dissenting opinion, asserting that this was an exceptional circumstance in which the Sixth Circuit should consider Parker and Banks's argument about Dixon's expert report, even though the argument was presented for the first time on appeal, and that Dixon's expert report created a triable issue of fact about whether the Winwoods impermissibly copied *Ain't That a Lot of Love* when they wrote *Gimme Some Lovin'*. *Id.* at 843–44. She also opined that the facts viewed in the light most favorable to Parker and Banks supported a finding of personal jurisdiction over Muff Winwood. *Id.* at 844–47.

## C. Motions for Attorney's Fees and Costs

The Winwoods and Kobalt filed their first motion for attorney's fees and costs under 17 U.S.C. § 505 after the Court granted summary judgment in Steve Winwood and Kobalt's favor and dismissed Muff Winwood for lack of personal jurisdiction, but before Parker and Banks appealed those rulings. (Doc. No. 102.) They argue that the Court should exercise its discretion to award fees under § 505 because Parker and Banks's infringement claims were objectively

4

unreasonable, their motives in bringing suit were questionable, and an award of fees would advance the public policy goals underlying the Copyright Act. (Doc. No. 103.) Attorney Jay S. Bowen filed a declaration attaching itemized fee and cost reports in support of the Winwoods and Kobalt's motion. (Doc. Nos. 106, 106-1, 106-2.) Parker and Banks responded in opposition, arguing that their infringement claims were meritorious and their motives were honest. (Doc. No. 108.) The Winwoods and Kobalt did not file an optional reply.

Following the Sixth Circuit's resolution of Parker and Banks's appeal, the Winwoods and Kobalt filed a supplemental motion for attorney's fees and costs (Doc. No. 125), incorporating by reference their previous arguments and further arguing that fees are warranted under § 505 because their defense of this action advanced federal copyright law (Doc. No. 126). Bowen filed a declaration attaching an itemized report of the Winwoods and Kobalt's attorney's fees related to the appeal. (Doc. Nos. 127, 127-1.) Parker and Banks responded in opposition, arguing that this case ultimately turned on analysis of the Federal Rules of Evidence, not the Copyright Act, and that awarding fees in this case would not further the Act's goals. (Doc. No. 129.) The Winwoods and Kobalt did not file an optional reply.

**II.     Legal Standard**

Section 505 of the Copyright Act of 1976 grants district courts discretion to award costs and attorney's fees in copyright infringement actions, providing that:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

The Supreme Court has recognized that this statute gives "broad leeway . . . to district courts" "without specifying standards that courts should adopt, or guideposts they should use, in

determining when such awards are appropriate." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1984–85 (2016). In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court "established several principles and criteria to guide" district courts' decisions under § 505. *Kirtsaeng*, 136 S. Ct. at 1985 (citing *Fogerty*, 510 U.S. at 519). More recently, in *Kirtsaeng v. John Wiley & Sons, Inc.*, the Supreme Court recognized that the statute "eschews any 'precise rule or formula' for awarding fees[,]" but nevertheless provided "additional guidance respecting the application of § 505[,]" including reiterating the factors first announced in *Fogerty*. *Kirtsaeng*, 136 S. Ct. at 1985 (quoting *Fogerty*, 510 U.S. at 534). Specifically, the Supreme Court held as follows:

> First, a district court may not "award[ ] attorney's fees as a matter of course"; rather, a court must make a more particularized, case-by-case assessment. Second, a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be "encouraged to litigate [meritorious copyright defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." In addition, . . . "several nonexclusive factors" [should] inform a court's fee-shifting decisions: "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence."

*Id.* (first, second, and fifth alterations in original) (quoting *Fogerty*, 510 U.S. at 527, 533, 534 n.19).

Courts must also consider whether awarding attorney's fees in a particular case "advances the Copyright Act's goals." *Id.* at 1986. The ultimate goal of copyright laws is "'enriching the general public through access to creative works.'" *Id.* (quoting *Fogerty*, 510 U.S. at 527). The Act "achieves that end by striking a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work." *Id.* Ultimately, when considering requests for fee awards under § 505, "courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Id.* at 1989.

Regarding costs, the Supreme Court has held that the "full costs" that may be shifted under § 505 are only those that fall within "the six categories specified in the general costs statute,

codified at [28 U.S.C.] §§ 1821 and 1920." *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 876 (2019). Section 1821 addresses payment of lay witnesses' costs and expenses. 28 U.S.C. § 1821. "An examination of § 1821 in its entirety shows clearly that it provides for the payment of certain fees and allowances to witnesses, not to parties." *Sales v. Marshall*, 873 F.2d 115, 119 (6th Cir. 1989). Section 1920 provides for the taxation of the following six categories of costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. A party seeking payment under § 1920 must file an itemized bill of costs. *Id.*

**III.** **Analysis**

    **A.** **Attorney's Fees**

The Winwoods and Kobalt argue that a fee award is warranted in this case under § 505 because Parker and Banks's infringement claims were objectively unreasonable, their motives in bringing suit were questionable, and a fee award will serve the policy goals of the Copyright Act. (Doc. Nos. 103, 126.) As a threshold matter, the Court rejects the defendants' argument that awarding fees under § 505 is "'the rule rather than the exception and they should be awarded routinely.'" (Doc. No. 126, PageID# 1239 (quoting *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008)).) The Supreme Court held in *Kirtsaeng* that district courts may not award attorney's fees under § 505 "'as a matter of course'" and must instead engage in a

"particularized, case-by-case assessment." 136 S. Ct. at 1985 (quoting *Fogerty*, 510 U.S. at 533). Undertaking that individualized assessment here, the Court finds that awarding attorney's fees is not appropriate under the *Fogerty* factors and would not further the goals of the Copyright Act.

       **1.      Objective Unreasonableness**

The Winwoods and Kobalt argue in their original motion for fees that Parker and Banks's infringement claims were objectively unreasonable because there was no admissible evidence that the Winwoods or Davis had access to *Ain't That a Lot of Love* when they wrote *Gimme Some Lovin'*. (Doc. No. 103.) This argument is unpersuasive for two reasons. First, the objective unreasonableness analysis is not limited to admissible evidence. *Cf. Jones v. Blige*, 558 F.3d 485, 494 (6th Cir. 2009) (affirming district court's denial of attorney's fees under § 505 where "expert testimony that the songs were similar, . . . although the testimony was excluded, . . . weighed against deeming the suit frivolous"). Parker and Banks initiated this infringement action relying on published interviews with Davis and another individual stating that Muff Winwood took the bass riff in *Gimme Some Lovin'* from a Homer Banks record and a book excerpt stating that copies of *Ain't That a Lot of Love* reached England in the mid-1960s and that the song transformed into *Gimme Some Lovin'*. Plaintiffs' counsel erroneously believed these materials were subject to hearsay exceptions and therefore admissible at summary judgment. Second, Dixon's expert report, though not filed with the summary judgment briefing, supports Parker and Banks's claims that the Winwoods and Davis had access to *Ain't That a Lot of Love* before writing *Gimme Some Lovin'* and that the two songs are substantially similar. (Doc. No. 108-3.) Dixon found that it is "quite plausible that the composers of [*Gimme Some Lovin'*] did indeed have access to [*Ain't That a Lot of Love*] prior to composing their song[,]" based on evidence that British DJ Roger Eagle played *Ain't That a Lot of Love* at The Twisted Wheel, a coffeeshop and nightclub in Manchester, England, where The Spencer Davis Group performed. (*Id.* at PageID# 1108, ¶ 22.) He further

8

found that the two songs have "clear and obvious similarities" including "identical" bass patterns, "nearly identical piano patterns[,]" and a "harmonic cadence pattern that is functionally the same[.]" (*Id.* at PageID# 1107, ¶¶ 15D–F, 17.)

Dixon's report was not considered at summary judgment because Parker and Banks did not file it with the summary judgment briefing. Although Parker and Banks did not succeed in having this evidence considered in support of their claims, the Court may consider it in this context. *Cf. Jones*, 558 F.3d at 494. Doing so, the Court finds that Parker and Banks's infringement claims were not objectively unreasonable. This factor therefore weighs against a fee award.

### 2. Motivations

The Winwoods and Kobalt's original motion for fees also argues that Parker and Banks's motivations were questionable. (Doc. No. 103.) Specifically, the Winwoods and Kobalt assert that Parker and Banks filed an "unnecessary and frivolous motion[ ]" to deem requests for admissions admitted "even after Defendants provided their responses . . . ." (*Id.* at PageID# 977.) Parker and Banks respond that, after more than four months had passed since serving the requests and after a few unsuccessful meet-and-confer attempts with defense counsel, Parker and Banks's counsel filed the motion to deem their requests admitted on September 5, 2017, and the Winwoods served their responses one day later, on September 6, 2017. (Doc. No. 108.)

The Winwoods and Kobalt have not responded to this argument, and the docket supports Parker and Banks's timeline. Parker and Banks filed their motion on September 5, 2017 (Doc. No. 95), asserting that they first served their requests for admission on April 26, 2017 (Doc. No. 95-1). The Winwoods and Kobalt's response in opposition to the motion expressly states that these defendants served responses to Parker and Banks's requests for admission "on September 6, 2017[.]" (Doc. No. 96, PageID# 900.) Before this motion could be resolved on the merits, the

Court granted summary judgment to Steve Winwood and Kobalt and the motion was therefore found moot. (Doc. No. 101.)

The Winwoods and Kobalt also assert that Parker and Banks's motivations were questionable because they "disregarded the rules of law—including submission of clearly inadmissible hearsay evidence and ignoring their burden to set forth specific facts showing a genuine issue for trial[.]" (Doc. No. 103, PageID# 977.) But Parker and Banks's counsel has submitted an affidavit stating that he believed, based on legal research and his professional judgment, that the magazine and book excerpts were admissible. (Doc. No. 108-2.) The Winwoods and Kobalt have not responded to this argument, and they have not pointed to any legal authority finding that the motivation factor weighs in favor of a fee award under circumstances like these.

The Court therefore finds that the Winwoods and Kobalt have not shown that this factor weighs in favor of awarding fees.

### 3. Advancing The Copyright Act's Goals

The Winwoods and Kobalt argue that awarding fees in this action would advance the goals of the Copyright Act because the resolution of this case was important to the advancement of federal copyright law. (Doc. No. 126.) Parker and Banks respond that this case was resolved based on the Federal Rules of Evidence and personal jurisdiction doctrine, not the Copyright Act, and that awarding fees would therefore do little to advance the Copyright Act's goals of compensation and deterrence. (Doc. No. 129.) Once again, the Winwoods and Kobalt have not responded to Parker and Banks's argument.

Considering all of the circumstances presented here, including the record evidence supporting Parker and Banks's infringement claims and the evidentiary and jurisdictional bases of the decisions rendered at summary judgment and on appeal, the Court finds that awarding

attorney's fees would not advance the Copyright Act's goals of "encouraging and rewarding authors' creations while also enabling others to build on that work." *Kirtsaeng*, 136 S. Ct. at 1986.

### B. Costs

The Winwoods and Kobalt also seek an award of costs under § 505 in the amount of $8,714.10. (Doc. No. 103.) Bowen states by declaration that these costs are related to "the retention of expert Lawrence Ferrara" and "administrative costs[.]" (Doc. No. 106, PageID# 1043, ¶ 11.) Specifically, the one-page cost report Bowen attaches to his declaration lists the following categories of costs: "Parking," "FedEx," "Westlaw Research," "Courier Fee," "UPS Shipping," "Web Search," and "Outside/Professional Services[.]" (Doc. No. 106-2, PageID# 1069.) The Winwoods and Kobalt have not referenced the statutory categories of allowable costs, and none of their itemized costs appears to fit within those categories. *See, e.g.*, *Rimini St., Inc.*, 139 S. Ct. at 878 (holding that "§§ 1821 and 1920 . . . do not authorize an award for expenses such as expert witness fees"). The Winwoods and Kobalt's request for costs under § 505 will therefore be denied.

## IV.     Recommendation

For these reasons, the defendants have not shown that an award of attorney's fees or costs is appropriate under 17 U.S.C § 505. The Magistrate Judge therefore RECOMMENDS that the defendants' motion for attorney's fees and costs (Doc. No. 102) and supplemental motion for attorney's fees and costs (Doc. No. 125) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 16th day of March, 2021.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge

12
Case 3:16-cv-00684   Document 134   Filed 03/16/21   Page 12 of 12 PageID #: 1294